J. T. FOSTER ET AL. v. B. P. ANDREWS.

No. 306.

1. Sale of Land on Credit—Vendor's Superior Title.—There is no principle of law more firmly established in this State than that, upon a sale of land on a credit by title bond or deed expressly retaining a vendor's lien upon the land to secure the payment of the purchase money, the title remains in the vendor until the purchase money is paid.

2. Same—Dealings Between Subvendees.—Dealings between subvendees, or legal proceedings between them to which the vendor is not a party, can have no effect upon the superior title of the vendor whose right is evidenced by express lien in the deed, or when conveyance is by title bond. See example.

3. Case Discussed and Limited.—Foster v. Powers, 64 Texas, 248, discussed, and the effect of the judgment limited to parties and privies; held not to

affect the superior title of a remote vendor, not party to suit, by reason of non-payment of purchase money, the deed expressly retaining lien therefor.

4. **Judgment of Court Without Jurisdiction.** — The judgment of a court (even of Supreme Court) without jurisdiction, will not protect one holding under it against a claim for rents asserted by the owner of the land so held.

APPEAL from McLennan. Tried below before Hon. A. C. PRENDERGAST, Special District Judge.

*Scarborough & Rogers*, for appellants.— 1. The decision of a court of competent jurisdiction is conclusive, not only as to the subject matter determined, but as to every other matter which the parties might have litigated in the case, and which they might have had decided. Or, as differently expressed, "the plea of res adjudicata applies not only to points upon which the court was actually required to pronounce judgment, but to every point which properly belonged to the subject of litigation, and which the parties, by exercising reasonable diligence, might have brought forward at the time." Foster v. Wells, 4 Texas, 103; Nichols v. Dibrell, 61 Texas, 541; Foster v. Powers, 64 Texas, 247. As to pendente lite purchasers, see Harle v. Langdon, 60 Texas, 555.

2. The right to possess the land without liability to account for rents and profits passed to Foster by the sheriff's deed to the land which he received when he bought it, and by the judgment of the Supreme Court which sustained his title, and this right continues in him until the title is divested out of him. Whitehead v. Fisher, 64 Texas, 638.

*Clark, Dyer & Bolinger*, and *S. L. Samuels*, for appellee, cited: Foster v. Powers, 64 Texas, 247; Cattle Co. v. Boon, 73 Texas, 549; Thompson v. Westbrook, 56 Texas, 265; Kennedy v. Embry, 72 Texas, 387; Buchanan v. Kaufman, 65 Texas, 235; Read v. Allen, 56 Texas, 176; Read v. Allen, 58 Texas, 380; Jones v. Williams, 41 Texas, 391; Allen v. Morris, 34 N. J., 161; Freem. on Judg., 3 ed., secs. 186, 201; Greenl. on Ev., secs. 27, 186, 205.

COLLARD, ASSOCIATE JUSTICE.—This is an action of trespass to try title, brought on the 22nd day of September, 1887, by appellee, B. P. Andrews, against J. T. Foster, one of the appellants, for 60 acres of land in McLennan County. Foster answered, disclaiming as to one-half the land, and by plea of not guilty. By amended petition, filed March 23, 1889, Robert Rogers was made a party defendant, but before this, to-wit, March 9, 1889, he had appeared and filed a plea of not guilty.

The cause was tried without a jury, and judgment was rendered for plaintiff, Andrews, for the land and $140 rent (from Foster and Rogers, jointly $105, and from Foster alone $35). Defendants appealed.

The trial judge filed conclusions of fact and law as follows:

"*Conclusions of Fact.*—The parties in open court agreed that Fountain Jones was the common source of title, and I so find. I further find, that on March 8, 1876, said Jones and wife sold the land in controversy to W. C. Parker for $500, wholly on a credit, due December 25, 1876, and in the deed to him of that date retained and reserved an express lien on said land to secure the payment of the said purchase money; the purchase money note drawing 10 per cent interest per annum from date.

"That on September 20, 1876, said Parker and wife sold said land to Isaac Bates for $571, wholly on credit, and in the deed of that date retained a lien on said land to secure the purchase money, taking two notes for the purchase money, one for $521, the other for $50, each bearing 10 per cent interest per annum from date, and each due December 25, 1876. That in this trade between Parker and Bates, it was the understanding and agreement between them that Bates was to become paymaster to said Jones for said $500 purchase money due from Parker to Jones.

"That on December 28, 1876, said Bates and wife, for the purpose of paying and cancelling the purchase money due from Parker to Jones for said land, and with the knowledge and acquiescence of said Parker, deeded said land back to said Jones, and in this way alone was the purchase money from Parker to Jones paid; or rather the purchase money from Parker to Jones was never paid, and because this could not be done, said Bates, with the knowledge and acquiescence of said Parker, on said date deeded said land back to said Jones, and at the time this was done said Jones, Bates, and Parker understood this was a full settlement of the land question between them.

"That on February 1, 1877, for the purpose of correcting the description of said land in the deed of December 28, 1876, above, said Bates and wife executed another deed to said Jones for said land.

"That on December 21, 1877, said Jones deeded said land to T. J. and J. T. Powers for $900, on credit.

"Said Fountain Jones died on November 29, 1878, and left a will, which was duly probated, etc., and in evidence, devising all his property to his wife, V. A. Jones.

"On December 29, 1882, said T. J. and J. T. Powers, not having paid the purchase money, and being unable to pay it ($900 they agreed to give Fountain Jones for said land), deeded said land to said Mrs. V. A. Jones in satisfaction of said purchase money.

"On December 20, 1883, said Mrs. Jones deeded said land to plaintiff for $595 cash paid.

"Each of these deeds was a general warranty deed.

"On October 29, 1879, W. C. Parker instituted suit in the District Court of this county against Isaac Bates on said $521 note, and to fore-

close the vendor's lien on said land, and obtained service by publication alone, and on November 16, 1880, obtained judgment and foreclosure. On December 13, 1880, an order of sale of said land under this judgment issued to this county, and the land was sold on January 4, 1881, by the sheriff, and bid in by J. T. Foster for $15, and deed to him duly executed by the sheriff, dated February 2, 1881.

"On March 28, 1881. Foster brought suit against said J. T. and T. J. Powers in this court for said land, lost it in this court, the judgment being rendered herein June 23, 1882. On December 22, 1883, Foster filed petition, bond, etc., for writ of error to the Supreme Court, the cause was taken there, and the judgment reversed and rendered for the said Foster against said Powers on February 6, 1883.

"On December 19, 1883, Foster deeded to R. H. Rogers a half undivided interest in said land.

"The rental value of said land is $35 per annum.

"The statement of facts in the case of Foster v. Powers was offered in evidence by defendants on the trial of this cause. It was objected to at first by the plaintiff, but before the court ruled on the question, plaintiff withdrew his objections, and stated that ' he would agree that the statement should be admitted in evidence for all purposes by both parties.' Defendants then introduced it in evidence, and in the further progress of the case it was considered by the court and both parties in evidence for all purposes, and the statement of the evidence of the witnesses as therein given was read to the court and argued by both parties on the argument of the cause, as the evidence of such witnesses in this case, and was so considered by the court in deciding the case and in making these conclusions of law and fact.

"From these conclusions of fact, I conclude as the law of the case:

"That the superior title to said land was in Fountain Jones and his devisee, and never passed to Parker or Bates; and that said Joneses were not concluded by the judgments in the case of Parker v. Bates or Foster v. Powers, and that the title to said land is in plaintiff, and he is entitled to recover."

The facts as found by the court are true. It is not stated in the findings of the court, but it is true, that the deed from Fountain Jones to T. J. and J. T. Powers, of date December 21, 1877, for $900, expressly retained the vendor's lien on the land in controversy to secure the payment of the same, being evidenced by four promissory notes, the first due January 1, 1878, the second January 1, 1879, the third January 1, 1880, and the fourth January 1, 1881. These notes were never paid, and in settlement of the same T. J. and J. T. Powers conveyed the land to Mrs. V. A. Jones, sole legatee under the will of Fountain Jones, December 29, 1882, who conveyed to plaintiff Andrews, December 20, 1883.

*Opinion.*—There is no principle of law more firmly established in this State than that upon a sale of land on a credit by title bond or deed expressly retaining a vendor's lien upon the land to secure the payment of the purchase money, the title remains in the vendor until the purchase money is paid.

This being true, the title to the land in controversy never passed from Fountain Jones, the common source of title, or his wife, until the sale by her to the plaintiff in this case on December 20, 1883. The findings of the court below, sustained by the testimony, ascertain this fact. If plaintiff below should not recover upon his title, there must be some sufficient reason for it.

Appellants contend that the final judgment of the Supreme Court in the cause of Foster v. Powers is res adjudicata of plaintiff's title acquired from Mrs. Jones.

Mrs. Jones was not a party to the foreclosure suit of Parker v. Bates; no defense was made by Bates or any one, he having no notice of the suit except that implied by publication of the citation. That suit only adjudicated the right of Parker to foreclose his vendor's lien note as against Bates. It did not affect the rights of Mrs. Jones. Foster, purchasing the land at sheriff's sale under that foreclosure, acquired no rights against Mrs. Jones' superior title. Bates, to whom Parker had sold the land by deed, reserving lien, had, before the foreclosure suit, with Parker's consent, conveyed the land back to Jones in settlement of the purchase money due Jones from Parker, for which vendor's lien was retained in deed of Jones to Parker, Bates becoming paymaster. On December 21, 1877, Jones conveyed the land to T. J. and J. T. Powers, by deed retaining vendor's lien for the purchase money, $900, which has never been paid, leaving the title in Jones, which passed to Mrs. Jones by his will upon his death, November 29, 1878, and it was still in her at the time Parker sued Bates, October 29, 1879.

Foster's recovery by final judgment of the Supreme Court on February 6, 1885, would be only a recovery of their right to the land, which could not be more than a right to pay the owner for it—an equity of redemption. Such recovery was of no more value than the deed of T. J. and J. T. Powers would have been. Mrs. Jones was not a party to that suit, nor was her vendee, Andrews, the plaintiff in this suit. It is true that she took a deed for the land from T. J. and J. T. Powers on December 29, 1882, pending the litigation between them and Foster, but she had the real title without that deed, and it did not affect her right under the real title. She was not holding title under the Powers deed, nor under Bates, nor under Parker, by virtue of this deed, but by a superior right to all of them. She was not claiming as vendee through the sale of Parker to Bates, in which sale Parker's vendor's lien was retained. Her rights are those of

Parker's vendor under express lien retained in Parker's deed, rights exe-cuted and vested by the deed from Bates to Jones with the consent of Parker. Had Parker paid for the land and so become the owner, and then sold by executory contract to Bates, who in turn conveyed to her, then Parker's foreclosure against Bates may have concluded her as to rights so acquired, whether she was a party to that suit or not, as was decided in the case of Foster v. Powers, 64 Texas, 248. In that case the court so treats the rights of Powers as vendee of Bates' vendee holding by unsatisfied executory contract from Parker, the true owner, as the facts then appeared. In that case the court went no further back into the rights of the parties than to Parker as the supposed owner, deciding that one purchasing from the vendee without notice, by deed retaining lien, that the purchase money had not been paid, was not a necessary party to his (Parker's) foreclosure against his immediate vendee, and that the purchaser under the foreclosure could recover the land from one so holding.

The court went no further. It did not decide that a vendor holding superior title would be concluded by a foreclosure suit by his vendee against the vendee of the latter. The legitimate scope and effect of Parker's judgment of foreclosure would be to bind Bates' vendee, or others under that deraignment, and so it was held that Foster could re-cover against Powers.

The title of Mrs. Jones now asserted was not dependent upon Bates' title. It did not come through Bates, or under the transaction between Parker and Bates, and so such title in her could not be affected by that litigation, she not being a party to the suit. When Foster recovered from Powers, they did not have her title. It is a mistake to suppose that her title rests upon the Powers deed to her. It matters not what was adjudicated in the suit of Foster v. Powers, or what the evidence was, the right now set up by Mrs. Jones' vendee, the plaintiff, was not and could not have been determined, as neither of them was a party to the suit. Giving all the effect to that judgment that it can have, it can not reach the right now asserted, the owners of such right not being par-ties to it. That judgment may have the effect to cut off her deraignment from the title Powers had, but not from the true title that Powers never had, that Bates never had, and that Parker never had.

The action of trespass to try title may be maintained and a recovery of land may be had upon the equitable as well as the legal title. Mrs. Jones' equitable title was superior to any title ever held by Parker or any parties claiming under him; and whether she had the legal title or not is of no im-portance. She had the superior, the only real title, and conveyed it to plaintiff.

There was ample evidence to sustain the finding of the court, that Par-ker had never paid Jones for the land. The testimony taken, the state-

ment of facts in the case of Foster v. Powers, was read by consent of parties, to be used for all purposes. Whatever was proved by the statement of facts in that case was properly before the court, and was matter for its consideration.

We have in the foregoing disposed of all the material questions arising by assignments of error in this appeal adversely to the appellants, and we conclude that defendants had no title that could be set up against that of plaintiff, and that the latter should have recovered the land.

Appellants have assigned as error that part of the judgment awarding plaintiff rents, upon the ground, that as defendants were in possession of the land by virtue of a writ of possession from the Supreme Court, they can not be considered such wrongdoers as are liable for rent.

The judgment of no court, as between defendants and third parties, could affect the right of the owner not a party under the facts of this case; and there can be no more efficacy in such judgment of our Supreme Court than any other court of competent jurisdiction. The judgment could have no more effect than deeds between third parties, passing the same rights.

The judgment of the court below is affirmed.

*Affirmed.*

Delivered October 25, 1893.

Rehearing refused.