## CAMPBELL v. ADAIR et al.

(Circuit Court of Appeals, Fifth Circuit.   January 3, 1911.)

### No. 2,089.

TRESPASS TO TRY TITLE (§ 35*)—PLEADING—ISSUES.

The defendants in an action of trespass to try title under the Texas statute filed a plea of not guilty and also a special plea, alleging that the sale of the land by the state under which plaintiff claimed had been canceled, and also setting up title in themselves under subsequent sales. The land was originally public school land of the state, and, to authorize a sale thereof under the statute, the purchaser must have been at the time a settler on the land, and he was required to continue to reside thereon for three years, and make improvements of a certain value, otherwise the sale was subject to forfeiture. It was admitted that a forfeiture of the sale under which plaintiff claimed was declared by the Commissioner of the General Land Office. *Held* that, under the issues, it was not error to instruct the jury that, to sustain his title, plaintiff must prove that the purchasers under whom he claimed resided on the land at the time they made the purchases, and also complied with the statute as to continued residence and improvements.

[Ed. Note.—For other cases, see Trespass to Try Title, Dec. Dig. § 35.*]

In Error to the Circuit Court of the United States for the Northern District of Texas.

Action at law by D. A. Campbell against C. J. Adair and others. Judgment for defendants, and plaintiff brings error.   Affirmed.

G. G. Wright and K. R. Craig, for plaintiff in error.

A. H. Kirby and S. H. Morrison, for defendants in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge.   This case is a consolidation of seven suits instituted by plaintiff in error for the recovery in the aggregate of eight sections of land situated in Martin county, Tex., four sections of which were claimed by plaintiff under a purchase from the state of Texas by William Moss, and four sections under purchases made by J. P. Waggener and William Young.   The original suit under the style of this cause was for two sections of said land held by the defendant, one section of which was embraced in the Moss purchase and one section in the Waggener and Young purchases.   So that all the issues involved in all the other cases were involved in this suit, and, for that reason, the remaining six cases were consolidated and tried with this case.   The pleadings in all of the cases were identical, except for the difference in the names of the defendants and the tracts of land involved, and by agreement the pleadings in only one case were set out in the bill of exceptions, and said pleadings are referred to as the pleadings under each one of the other cases.   The original petition was in statutory form of trespass to try title.   The defendant answered by a plea of "not guilty," which plea was followed by the following special pleading:

"For further answer to said petition this defendant says: That the land in controversy was originally set apart for the benefit of the public free

school fund of the state of Texas, and plaintiff claims title to the same through and under the sales claimed to have been made by the state of Texas to Wm. Moss and W. P. Young on or about the 3d day of October, 1902, and 21st day of January, 1903, by virtue of his application, affidavit, and obligation to purchase same, filed in the General Land Office of the state of Texas, and an award thereof by the Commissioner of the General Land Office of the state of Texas. That thereafter the Commissioner of the General Land Office of the state of Texas declared said land forfeited, and, so indorsed, the obligation given for said land, which indorsement was made and entered on the 17th day of November, 1905. That thereupon said land became and was forfeited to the state of Texas, subject only to the right of plaintiff's vendor within six months thereafter to institute a suit in the district court of Travis county, Tex., against the Commissioner of the General Land Office of the state of Texas for the purpose of contesting such forfeiture and setting aside the same upon the ground that the facts did not exist authorizing such forfeiture. That neither plaintiff nor his vendors, immediate or remote, ever instituted such suit within such time, by reason of which such forfeiture of the Commissioner of the General Land Office became and is fixed and conclusive, and plaintiff is now and has been since the expiration of said six months from the date of the indorsement of such forfeiture barred from any right or interest in or to said land, and defendant here now pleads such bar, and is ready to verify the facts constituting such bar. For further answer, and by way of cross-action, defendant says: That he is the owner of, entitled to, and in possession of, section 6, block 36, township 1-S, Texas & Pacific Railway Company survey, in Martin county, Tex., and section 12, block 37, township 1-S, Texas & Pacific Railway Company survey, in Martin county, Tex. That plaintiff asserts title to such land by virtue of and under a purchase thereof of one Wm. Moss from the state of Texas for section 12, and one by W. P. Young for said section 6. That all the right, title, or interest of said Wm. Moss and W. P. Young, and all persons claiming under them, has been forfeited by the Commissioner of the General Land Office of the state of Texas, and that such forfeiture has become, and is now, fixed and conclusive. That the claim asserted by the plaintiff to said land by reason of a mesne conveyance from the original purchaser of said land has been recorded in Martin county, Tex., and that said claim and said conveyance constitute and are a cloud upon defendant's title to said above-described property, which cloud defendant is entitled to have removed. Wherefore, premises considered, this defendant prays that he have judgment against the plaintiff for the title to and possession of said land, removing the cloud constituted by the claim of the plaintiff, and the conveyance above named upon defendant's said title, that he have his writ of possession, and recover of and from the plaintiff all costs of suit, and for general relief."

To this answer the plaintiff filed his first supplemental petition, as follows:

"First. Plaintiff excepts to so much of such answer as sets up the failure of the plaintiff or his vendor to institute suit in the district court of Travis county for the purpose of setting aside the alleged action of the Commissioner of the General Land Office, for the reason that such failure to sue is no bar to this action.

"Second. Further replying to said answer, plaintiff says that the alleged act of the Commissioner of the General Land Office in declaring and indorsing a forfeiture of the purchase of plaintiff's respective vendors, R. L. Slaughter and Wm. Moss, was void and of no effect, for the reason that the facts did not exist which under the law were prerequisite to the exercise of such power, for that the alleged declaration and indorsement of forfeiture were based upon the sole grounds of the alleged failure of plaintiff's vendors, R. L. Slaughter and Wm. Moss, to reside upon and improve the respective lands purchased by them as required by law; whereas the facts were that plaintiff's said vendors had resided upon and improved their respective lands as required by law, that long prior to the date of said attempted forfeiture

plaintiff's vendor, R. L. Slaughter, and his predecessors in title, and the said Wm. Moss, had for a period of three consecutive years, each next after the purchase thereof from the state resided upon and improved in good faith his home section of the respective purchases, viz., R. L. Slaughter, section No. 2, block 37, and Wm. Moss, section 46, in block 37, such improvements being of a value in each case in excess of $300. And the Commissioner of the General Land Office was without the power or jurisdiction to forfeit said purchases upon the grounds stated or for any other reason, all interest due the state on said purchases having been paid as the same matured, all of which plaintiff is ready to verify."

This comprises all the pleadings that there were in the case. That portion of defendant's answer which set up plaintiff's failure to bring suit in the district court of Travis county was abandoned at the hearing. Hence there was no action taken on the demurrer thereto, and it was not considered by the court on the trial. The case, consolidated as before stated, went to trial before a jury on October 13, 1909. The verdict of the jury was in favor of the defendants, each for the particular tract of land claimed by him. Upon which verdict, the court rendered and entered judgment that plaintiff take nothing by his suit, and that he pay all costs, to all of which plaintiff excepted and duly sued out a writ of error.

William Moss made application the 3d day of October, 1902, to purchase from the state as his home section 46, in block 37, and subsequently on the same day made application for the purchase of sections 8, 12, and 44, in block 37, as additional lands. On October 5, 1905, he conveyed all these sections to R. L. Slaughter. On October 3, 1902, J. P. Waggener made his application as an actual settler for the purchase of section 2, in block 37, for a home. On January 21, 1903, he conveyed this section to W. P. Young, who duly filed his substitute applications and obligations, and on June 12, 1903, filed his applications and obligations for the purchase of his additional lands, sections 6 and 18, in block 36, and June 17, 1904, for purchase of section 22, in block 37. On December 13, 1904, he conveyed these four sections to R. L. Slaughter, who on the same day filed his substitute applications and obligations covering these sections, and December 7, 1907, conveyed to D. A. Campbell all of the eight sections involved in this suit. The applications of Moss and Waggener for the purchase of these lands from the state show that they were made under the provisions of title 87, c. 12a, Rev. St. 1895, and the amendments thereto by the act of May 19, 1897 (Laws, 1897, c. 129), and the provisions of an act relating to the sale and lease of public free school and asylum lands, and to repeal all laws and parts of laws in conflict therewith, approved April 19, 1901 (Laws 1901, c. 125). The statute prescribing the manner of sale of such lands provided:

"When any portion of said land has been classified to the satisfaction of the commissioner under the provisions of this chapter or former laws, such land shall be subject to sale, but to actual settlers only." Article 4287, Sayles' Ann. Civ. St. 1897.

The purchases of the land involved were made under the act of 1901, which prescribed the form of application, bond, affidavit, amount of payment, and rate of interest. No question was made in this case

as to the purchases of William Moss, Waggener, and others being in the form prescribed by the statute.

Section 3 of the act of 1901 (Supplement to Sayles' Annotated Civil Statutes of 1897–1904, p. 442) provides, among other things:

"Every purchaser shall be required within three years after his purchase to erect permanent and valuable improvements on the land purchased by him, which improvements shall be of the reasonable market value of three hundred dollars. If any purchaser shall fail to reside upon, and improve in good faith the land purchased by him as required by law he shall forfeit said land and all payments thereon to the state to the same extent as for the nonpayment of interest, and such land shall be again upon the market as if no such sale and forfeiture had occurred, and all forfeitures for non-occupancy shall have the effect of placing the land upon the market without any action whatever on the part of the Commissioner of the General Land Office."

Article 4218*l*, Sayles' Ann. Civ. St. 1897, provides:

"If upon the 1st day of November of any year the interest due for the year on any obligation remains unpaid, the Commissioner of the General Land Office shall indorse on such obligation 'land forfeited' and shall cause an entry to that effect to be made on the account kept with the purchaser, and thereupon said land shall be thereby forfeited to the state without the necessity of re-entry or judicial ascertainment and shall revert to the particular fund to which it originally belonged and be resold under the provisions of this chapter or any future law."

The act of 1901 did not repeal the section just recited, which is in the act of 1897 (Slaughter v. Terrell, 100 Tex. 600, 102 S. W. 399), and the Commissioner of the General Land Office was authorized to indorse the forfeiture of the land for failure to reside upon and improve the land in the same manner as was provided for his declaring the forfeiture for nonpayment of interest; his authority for doing so being dependent upon the existence of the facts of nonpayment or failure to improve. Gracey v. Hendrix, 93 Tex. 30, 51 S. W. 846.

Article 4218j, Sayles' Ann. Civ. St. 1897, provides:

"All sales shall be made by the Commissioner of the General Land Office or under his direction. He shall prescribe suitable regulations whereby all purchasers shall be required to reside upon as a home the land purchased by them for three consecutive years next succeeding the date of their purchase except when otherwise provided. Such regulations shall require the purchaser to reside upon the land for three consecutive years herein mentioned, and to make proper proof of such residence and occupancy to the Commissioner of the General Land Office within two years next after the expiration of said three years by his affidavit, corroborated by the affidavits of three disinterested and credible persons to be certified by some officer authorized to administer oaths. And on making such proof the commissioner shall issue to the purchaser, his heirs and assigns a certificate showing that fact."

The plaintiff on the trial introduced evidence of the classification and valuation of the land, the several applications to purchase, obligations, and awards covering all of the lands in controversy as well as the mesne conveyances from the original purchasers down to the plaintiff, and then introduced testimony tending to prove the residence upon the lands and improvements made thereon and the value of such improvements.

The plaintiff in error, who was plaintiff below, submits that the only issue made by the pleadings, and which the plaintiff was required to meet, was as to the residence upon and improvement in good faith of the land by the respective persons claiming to have purchased them from the state, that the error of the trial court was in submitting the additional issue of the validity of the original purchase from and the sale by the state, that is, the question as to whether the respective persons had actually settled upon the land at the time of the filing of their respective applications for the purchase of the same. He urges that this issue was not only not raised by the pleadings, but was in effect excluded thereby; that the defendant by his pleadings specifically alleged that there was a sale by the state and a purchase by the plaintiff's vendor; that this, where nothing to the contrary was alleged, was equivalent to an admission of a legal or valid sale, and that the allegation of forfeiture implied that there was a sale and rights acquired by it as a subject of forfeiture; that the declaration of forfeiture indorsed on the several applications as well as the reclassification and appraisement of the land was an admission that there had been a sale and right acquired under it, and such rights were forfeited because of the supposed failure to reside upon and improve the land; that, if the applicants for purchase were not in fact actual settlers on the land at the time they filed their application to purchase, there was no sale, because there was not a person to whom the commissioner by law was authorized to make a sale, and it is settled law that, although the commissioner may accept the money of a proposed purchaser, approve his application and bond, and award the land, it is not a sale, and that the transaction is void, and does not have the effect of taking the land off the market, and another person who is an actual settler on the same land may file his application and obligation and tender the purchase money to the commissioner, and upon proof of such facts recover the land by suit of trespass to try title from the person to whom the commissioner had so improperly awarded it.

Plaintiff in error further contends that the special pleading filed by the defendant in addition to his plea of "not guilty" was an abandonment of his plea of "not guilty," that the reply of the plaintiff to the plea of defendant was in effect an admission by the plaintiff that his title was as stated by the defendant, and that the commissioner had declared the purchase forfeited, but made the issue that the action of the commissioner was ineffective and void for the reason that the facts did not exist, viz., the failure to reside upon and improve the land, which were prerequisite to the power of forfeiture given by statute to such officer. On the other hand, the defendant submits and urges that this being a statutory action of trespass to try title, and the defense being "not guilty" (the special plea in bar by defendants having been abandoned at the trial and not being considered by the court), the burden was on plaintiff to show, first, a valid purchase of the land from the state by his vendors; second, continued residence upon and occupancy of the land by the original purchaser and his vendees for three years next succeeding the date of purchase; third, placing on the land purchased by such original purchaser within these three years improvements to the value of $300.

That none but those who were actual settlers on the public free school land at the time of making application and affidavit of purchase were entitled to purchase and the award by the Commissioner of the General Land Office to one not such actual settler was void, and conferred no rights. That no question was made at the trial by defendants, nor is any made here that the applications, affidavits, and obligations under which the plaintiff claimed were not in the form prescribed by the Commissioner of the General Land Office, nor was any question made as to the plaintiff's ownership of whatever rights existed under said applications, affidavits, and obligations. The contention was made at the trial, and is here made, that the affidavit made by William Moss and the similar one by J. P. Waggener in their respective applications to purchase were false when made and conferred no rights on them or their vendee, plaintiff in error. The plaintiff admitted in open court on the trial below that the Commissioner of the General Land Office after having indorsed the forfeiture placed these lands on the market for sale again, and that these defendants purchased under that sale and are holding under a purchase made from the state from this subsequent offer; also, that all the applications, obligations, and affidavits by these defendants were in due form.

There was conflict in the testimony on the trial as to the occupancy of what are called the "home sections" by the vendors of the plaintiff.

The trial judge charged the jury in substance that:

"If you believe from the evidence that William Moss was an actual settler on section No. 46 of block No. 37, which he claimed to be his home section, and that he in good faith resided upon it as a home for three years next succeeding the 3d of October, 1902, and improved the same and during said years placed on said section permanent and valuable improvements of the reasonable market value of $300, you will find for the plaintiff as to the Moss land. On the other hand, if you fail to find from the evidence that William Moss was such actual settler on October 3, 1902, or to find that he in good faith resided on the section as a home for the three years specified, and improved the same, or if you fail to find that during the three years mentioned he placed on said land valuable improvements of the reasonable market value of $300, then in either of these events your verdict will be in favor of the defendant."

And similar instructions were given as to the other sections involved.

Against these instructions plaintiff in error assigns that the court erred by submitting to the jury by his charge, as an issue, the question of whether the plaintiff's vendor, William Moss, was an actual settler on the land at the time he filed his application to purchase same. Whatever disposition we make of this assignment will render the other assignments immaterial and excuse us from specially examining them. In Shields v. Hunt, 45 Tex. 426, we find in the opinion this language:

"It has, at least ever since the decision of this court in the case of Rivers v. Foote, 11 Tex. 662, been, we believe, the recognized rule of pleading and practice in actions of trespass to try title that when the defendant pleads 'not guilty,' and also pleads specially, the effect of the plea of 'not guilty' is merely to impose on the plaintiff the necessity of establishing his title, and as a consequence the defendant is limited in his defense to the special defenses upon which, by his pleading, he has notified the plaintiff he intends to rely. * * * By pleading specially the defendant gives notice of his defenses, and the plaintiff has the right to suppose he will rely on none

other, and ought not to be required to come prepared with evidence to meet other defenses than those which the defendant by his pleadings has asserted as the matters of defense upon which he will rely."

In Custard v. Musgrove, 47 Tex. 217, the question in the case on appeal was: Did the burden of proof rest on the defendant Musgrove, he having pleaded title in himself, derived, as the interest sued for, from the plaintiff Walter Custard? If so, the court erred in directing the jury to find a verdict for the defendant, defendant having adduced no evidence in support of his plea and in fact no evidence at all.

"Since the decision of the case of Rivers v. Foote, 11 Tex. 670, it has been regarded as substantially settled that when a defendant in an action of trespass to try title to land files a special plea setting up title in himself and setting out his title he is confined in his defense to the title set up by him, and that the general denial or plea of 'not guilty' that he may have pleaded also is thereby waived. This rule has been directly affirmed by the late decision of this court in Shields v. Hunt, supra."

It will be observed, we think, from a comparison of all the cases, and we think we have examined all of the Texas cases on this subject, that the rule recognized as well settled cannot be applied to this case in the manner contended for and to the effect insisted on by the plaintiff in error. The fact that that portion of defendant's answer which set up plaintiff's failure to bring suit in the district court of Travis county was abandoned at the hearing, and that hence there was no action taken on the demurrer thereto, and it was not considered by the court on the trial, does not in our opinion at all affect the application of the rule to the plea the defendant had filed, and the suggestion of that fact by the defendant is without force.

We conclude that the judgment of the court below should be affirmed. It is so ordered.